# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO: 4:16-CV-71-JHM**

**QUINCY GILMORE**                                                            **PLAINTIFF**

**V.**

**LAND O'FROST, INC., et al.**                                     **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 24]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

Plaintiff Quincy Gilmore filed this action after he was terminated from his position at Land O'Frost, Inc., a meat processing company in Madisonville, Kentucky. He brings this lawsuit against Land O'Frost and certain members of Land O'Frost management, LaSenna Powell, James Texas, and James Feeney.

Gilmore began working at Land O'Frost in February 2014 in the Maintenance Department. According to the Complaint, he was just one of three African-American employees working second shift. Gilmore alleges that he was treated differently than his Caucasian coworkers, particularly when it came to discipline. For example, Gilmore claims that he was regularly written up for behaviors that were acceptable for his Caucasian coworkers. Gilmore also claims that he was treated especially harshly by Land O'Frost management, particularly Human Resources Manager LaSenna Powell, Plant Maintenance Manager James Feeney, and Processing Maintenance Manager James Texas.

Eventually, Gilmore's belief that he was being treated unfairly at Land O'Frost led him to file a discrimination claim with the Kentucky Commission on Human Rights ("KCHR"). Within the Charge of Discrimination, Gilmore alleges he was "treated differently and disciplined because of [his] race, black." (Charge of Discrimination [DN 1-2] at 26). Gilmore states that after he filed his KCHR Charge, he endured constant criticism from his manager, who he believes was retaliating against him for filing his claim. In order to resolve the issues alleged in Gilmore's KCHR Charge, Gilmore and Land O'Frost participated in mediation. Their mediation was successful and Gilmore withdrew his KCHR Charge pursuant to a settlement agreement. Gilmore had all disciplinary action removed from his record and was moved to day shift at his request.

Less than a month later, another issue arose when Gilmore requested a day of leave under the Family and Medical Leave Act ("FMLA") to take his son to the hospital. Although he had been given the entire day off for FMLA leave, Gilmore clocked in at 5:02 a.m., worked for several hours and then left to care for his son. The next day, Gilmore's supervisor, James Texas, informed him that he had been docked half of an attendance point as a punishment for clocking in two minutes late. Gilmore argued that there should be no deduction in attendance points given that he was granted an entire day of FMLA leave and his decision to work for a few hours was voluntary. He further attempted to resolve this issue with LaSenna Powell. Eventually, Powell told Gilmore that his half-point had been returned to him. Gilmore requested documentation to prove that his half-point had indeed been returned but Powell did not provide any. According to Gilmore, Powell would not respond to his emails and hung up when he attempted to call.

Gilmore also complains of a new lunch schedule implemented by Defendants that required employees to be on call throughout their lunch breaks although they were not being

paid. Gilmore states that this new policy meant that he was often unable to take uninterrupted breaks during lunch because he was required to work. He also received a write-up for taking a late lunch break on a day that he was forced to work during his scheduled break and claims that Caucasian employees were not written up for the doing the same thing. Gilmore voiced his concerns to his supervisor, James Texas, who forwarded them to James Feeney. When nothing was done, Gilmore filed a complaint with the Department of Labor in July 2015. This resulted in the Department of Labor initiating a wage and hour investigation of Land O'Frost. Eventually, Land O'Frost reached a settlement with its employees regarding back pay for lunch break where they were forced to work. Regardless, Gilmore argues that the back pay from the settlement was only a portion of the time for which he claims he is entitled to overtime wages.

After he filed the complaint with the Department of Labor, Plaintiff alleges that "Mr. Feeney and Mr. Texas continued to single out Mr. Gilmore for disparate and retaliatory treatment." (Compl. ¶ 92.) Gilmore claims that he was purposefully excluded from meetings. In addition, Texas told Gilmore's coworkers to keep an eye on Gilmore and "be careful around Mr. Gilmore because [Land O'Frost was] looking for any reason to get rid of him." (*Id.* ¶ 94.) The Complaint states that "Mr. Feeney and Ms. Powell were searching for any excuse to fire Mr. Gilmore." (*Id.* ¶ 95.) Gilmore also believes that an individual within Land O'Frost was sabotaging some of the equipment for which Gilmore was responsible for maintaining "in order to fire him." (Compl. ¶ 56.)

Then, in the fall, Land O'Frost management became aware that a large amount of copper wire was stolen from the facilities. After conducting an investigation, Defendants concluded that two individuals, Gilmore and Lee Kautzman, were responsible for the theft. Both Gilmore and Kautzman were terminated from Land O'Frost.

Gilmore filed this action in Hopkins County Circuit Court in May 2016. Defendants later removed to this Court on the basis of federal jurisdiction. (Notice of Removal [DN 1] ¶ 5). Gilmore's Complaint alleges claims under the Kentucky Civil Rights Act ("KCRA") for discrimination based on race (Count I), hostile work environment (Count II), and retaliation (Count III); claims under the FMLA for interference (Count IV) and retaliation (Count V); promissory estoppel (Count VI); defamation (Count VII); and unpaid wages and liquidated damages under KRS § 337.385 (Count VIII). Defendants now move for partial summary judgment.[1]

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to

---

[1] Although Defendants move to dismiss Plaintiff's Complaint in its entirety, they do not discuss a basis for dismissal of Plaintiff's claims for hostile work environment or retaliation under the KCRA. Therefore, Counts II and III of Plaintiff's Complaint remain.

4

particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

### 1. Discrimination (Count I)

First, Gilmore alleges that Defendants violated the KCRA by discriminating against him on the basis of race. "Claims under the KCRA are analyzed similarly to claims under Title VII." *Roof v. Bel Brands USA, Inc.*, 64 Fed. App'x 492, 496 (6th Cir. 2016). A successful claim of discrimination under the KCRA requires that Gilmore show (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Meads v. Lexington-Fayette Urban Cty. Gov't*, 2016 U.S. App. LEXIS 23776 at *9−*10 (6th Cir. Jan. 20, 2016) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)). If a prima facie case is presented, the defendant must articulate a nondiscriminatory basis for the complained of adverse action. *Wright*, 455 F.3d at 707 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* If the defendant can provide a nondiscriminatory explanation for the adverse action, the burden shifts back to the plaintiff to show that the defendant's "legitimate nondiscriminatory reason was a pretext for discrimination." *Id.* at 706−07 (quotation marks omitted). "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a

preponderance of the evidence, the intent to discriminate." *Id.* at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

The first three elements of Gilmore's prima facie case of racial discrimination are undisputed. Both parties agree that as an African-American, Gilmore was a member of a protected class. They also agree that Gilmore suffered an adverse employment action when he was terminated from a job that he was qualified to perform at Land O'Frost. However, Defendants argue that Gilmore cannot meet the last element necessary to prove his prima facie case – that he was treated differently than similarly-situated coworkers. Assuming, for the sake of argument, that Gilmore could make a prima facie case for discrimination, Defendants have offered a nondiscriminatory reason for Gilmore's termination. As noted in Exhibit E, which is attached to the Complaint, Gilmore was terminated because Defendants had reason to believe that he was involved in theft of copper wire from the Land O'Frost facility. Therefore, the burden shifts back to Gilmore to show that Defendants' proffered reason for termination is pretext for discrimination. This is where Gilmore's claim fails.

> To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

*Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 883 (6th Cir. 1996). In this case, the record is devoid of any evidence of pretext. Defendants have provided ample documentation to show that Gilmore's termination was based on an honest belief that he was guilty of stealing copper wire from the facility, which is a sufficient reason for termination. Moreover, although Gilmore generally contends that he "has shown that the constant pattern of abuse that he was subjected to proves a pretextual reason for his termination," there is no evidence within the record to support

this contention. (Resp. to Def.'s Mot. for Summ. J [DN 29] at 10.) Instead, all of the instances of alleged discrimination (unfair write-ups, harsh meeting with superiors, etc.) are wholly unrelated to Gilmore's eventual termination. Furthermore, the investigation of copper wire theft led to Defendants firing two individuals – Gilmore, a black man, and Lee Kautzman, a white man – making it even less probable that these terminations were a pretext for racial discrimination. Because no reasonable jury could find that this legitimate nondiscriminatory reason was pretext for discrimination, summary judgment is **GRANTED** to Defendants on Count I of Plaintiff's Complaint.[2]

### 2. Family Medical Leave Act (Counts IV and V)

The FMLA entitles qualifying employees to take unpaid leave when necessary to attend to the health needs of themselves or their families. For qualifying employees who feel that their employers are not following the requirements of the FMLA, there are two theories of recovery available: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007). Gilmore seeks damages under both theories of recovery relating to his FMLA leave on July 7, 2015.

First, in Count IV, Gilmore brings a claim of FMLA interference. To establish a claim for FMLA interference, Gilmore must show that (1) he was an eligible employee; (2) his employer was a covered employer; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intent to take leave; and (5) his employer denied him FMLA benefits or interfered with FMLA benefits or right to which he was entitled. *Crawford v. JP Morgan Chase & Co.*, 531 Fed. App'x 622, 625 (6th Cir. 2013). Defendants argue that Gilmore cannot prove

---

[2] Because Defendants offer a nondiscriminatory reason for firing Gilmore and Gilmore cannot show that reason is pretext for discrimination, Count III of the Complaint would likewise be dismissed should Defendants move for summary judgment since KCRA claims of retaliation use the same burden-shifting framework.

7

the fifth element of an FMLA retaliation claim, stating that "Land O'Frost never interfered with Gilmore's exercise of his FMLA rights." (Mot. for Summ. J. at 16.) Gilmore claims that the aggrieved interference with his FMLA rights is that he was docked half of an attendance point for clocking in late on the day of his FMLA leave. After Gilmore became aware of this oversight, he emailed Land O'Frost Human Resources Manager, LaSenna Powell to ask that his point be restored. Eventually, Powell told Gilmore that his half-point would be returned. Still, Gilmore argues that he has no proof that the half attendance point was ever actually credited to him despite emailing Powell to ask for documentation.

The Court must grant summary judgment in favor of Defendants. As the Plaintiff, the burden is on Gilmore to offer evidence of FMLA interference. Gilmore was asked during his deposition whether he knew if Powell returned his half-point for attendance after she was made aware that he was on FMLA leave on the day he was docked for clocking in late.

> Q: Did she give you your half-point back?
> A: She said she did. I don't know if she did.
> Q: Well, you don't know that she didn't either, do you?
> A: No, I don't know that she didn't, because I don't – wouldn't have access to the records.

(Gilmore Dep. [DN 25] at 61.) Gilmore's statement that he is unsure whether Defendants did or did not penalize him for taking FMLA leave is insufficient evidence to support a claim for FMLA interference. Because there is inadequate proof in the record for a reasonable jury to find that Defendants interfered with Gilmore's rights under the FMLA, summary judgment is **GRANTED** to Defendants on Count IV.

In Count V, Gilmore claims that Defendants retaliated against him for taking FMLA leave. To establish an prima facie case of retaliation, Gilmore must show the following by a preponderance of the evidence: (1) that he engaged in an activity protected by the FMLA; (2)

that Defendants knew of this exercise of his protected rights; (3) that Defendants thereafter took an employment action adverse to Gilmore; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Crawford*, 531 Fed. App'x at 626−27. Again, this claim is premised on Gilmore being docked half of an attendance point for clocking in late on the day he had approved FMLA leave. Since no reasonable jury could find that Gilmore has provided sufficient evidence that he was retaliated against based on the evidence currently in the record, summary judgment is **GRANTED** to Defendants on Count V.

### Promissory Estoppel (Count VI)

Defendants have also moved for summary judgment as to Count VI, which asserts a claim of promissory estoppel. In Count VI of his Complaint, Gilmore asserts that Land O'Frost "promised to follow the policies and procedures outlined in the employee manual regarding employee discipline." (Compl. ¶ 154.) "Promissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. Ct. App. 2003). Under Kentucky law, the elements of promissory estoppel are (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise. *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (quoting *C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 350–51 (W.D. Ky. 2012)). Furthermore, a claim for promissory estoppel requires "that an actual promise was made, [and] that the promise was clear, definite, or unambiguous." *Street v. U.S. Corrugated, Inc.*, 2011 WL 304568, at *6 (W.D. Ky. Jan. 25, 2011) (citing 31 C.J.S. Estoppel and Waiver § 117).

In this case the alleged promises made by Defendants within the Land O'Frost employee handbook do not meet the standard required by courts for a successful claim of promissory estoppel. Instead, when Gilmore received the Land O'Frost employee handbook, he signed an acknowledgment that stated,

> This handbook is an important non-contractual document intended to serve as a guide to help you become acquainted with your Company. It is not the final word in all cases. Individual circumstances usually dictate individual attention. This handbook is not to be construed as a contract as it merely describes the Company's general philosophy concerning policies and procedure.

(Employee Acknowledgment [DN 24-16].) Based on this language, no reasonable jury could find that there were clear, definite, and unambiguous promises made to Gilmore. To the contrary, the handbook was clear that it was not meant to be relied on and instead, was only meant to serve as guide. Summary judgment is **GRANTED** to the Defendants on Count VI.

### Defamation (Count VII)

Defendants also seek summary judgment on Count VII of the Complaint in which Gilmore asserts a claim of defamation. Under Kentucky law, a defamation claim requires proof of (1) a defamatory statement; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004).

The only evidence supporting Gilmore's defamation claim is his own Verified Complaint stating, "It is Mr. Gilmore's strong belief that Management at [Land O'Frost] told all other employees that he was fired because he stole copper wire from the company." (Compl. ¶ 108.) However, this statement from Gilmore's Verified Complaint contradicts statements made during his deposition. When asked about his defamation claim during his deposition, Gilmore stated that it was "common knowledge" that he was fired for theft. (Gilmore Dep. at 240.) He did not assert Defendants told other employees that Gilmore was fired for theft. In fact, Gilmore

testified that his coworkers inferred the reason for his termination from the fact that he was no longer at work following his interview during the theft investigation. Because these contradictory statements by Gilmore are the only evidence in the record relating to defamation, no reasonably jury could conclude that Gilmore has proved that Defendants made defamatory statements about him. Therefore, summary judgment is **GRANTED** to Defendants on Count VII.

### Wage and Hour (Count VIII)

Lastly, in Count VIII, Gilmore claims that he is entitled to relief as Defendants failed to pay him wages and overtime when he was on call during lunch breaks. Defendants argue that they are entitled to summary judgment because they have already been released from liability on Gilmore's claim for overtime compensation. Back in July 2015, Gilmore filed a complaint with the Department of Labor based on Land O'Frost's new policy that required employees to be on call during lunch breaks. On January 27, 2016, Gilmore settled with the company and received some back wages to cover overtime for lunch breaks when he was forced to work. The settlement agreement discharged Land O'Frost from liability for overtime payments from July 16, 2011 through July 25, 2015. Gilmore now claims that Defendants owe him additional overtime wages because "from the 25th of July 2015 until he was fired there [were] several periods of time that Mr. Gilmore was still required to work during lunch and break periods and is entitled to pay for those specific periods of time." (Compl. ¶ 110.) This issue has yet to be adjudicated and a reasonable jury could find that Gilmore is entitled to overtime compensation under KRS § 337.385. Therefore, summary judgment is **DENIED** on Count VIII of the Complaint.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** on Counts I, IV, V, VI and VII and **DENIED** on Count VIII. Counts II and III also remain as they were not addressed in the Motion for Summary Judgment.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 7, 2018

cc: counsel of record