UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:16-CV-71-JHM

QUINCY GILMORE                                                                    PLAINTIFF

V.

LAND O'FROST, INC., et al.                                                       DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment [DN 35]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendants' Renewed Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

Plaintiff Quincy Gilmore filed this action after he was terminated from his position at Land O'Frost, Inc., a meat processing company in Madisonville, Kentucky. Gilmore claims that during his employment at Land O'Frost, he was regularly disciplined by management for behaviors that were acceptable for his white coworkers. Within his Complaint, Gilmore alleges that management was looking for any reason to get rid of him and that he was eventually fired in retaliation for making complaints about Land O'Frost to the Kentucky Commission on Human Rights ("KCHR") and the Department of Labor. Defendants claim that Gilmore was fired after an investigation led management to believe that he was one of the people responsible for stealing copper wiring from the Land O'Frost facility.

Gilmore filed this lawsuit against Land O'Frost and certain members of Land O'Frost management, LaSenna Powell, James Texas, and James Feeney. Previously, Defendants brought a Motion for Summary Judgment, asking that all claims against them be dismissed. At that time,

the Court dismissed Gilmore's claims of discrimination based on race, interference and retaliation under the Family and Medical Leave Act, promissory estoppel, and defamation, but did not find adequate grounds for dismissal of Gilmore's wage and hour claim in Count VIII. In addition, Counts II and III remained because Defendants did not discuss a basis for dismissal of his claims of hostile work environment or retaliation within his first Motion for Summary Judgment. Now, Defendants renew their request for the Court to dismiss the remaining claims against them.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence

of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

### 1. Hostile Work Environment (Count II)

In Count II of the Complaint, Gilmore alleges that Defendants subjected him to unwelcome harassment which created an "intimidating, hostile, or offensive work environment" in violation of the Kentucky Civil Rights Act ("KCRA"). (Compl. ¶ 129.) Hostile work environment claims under the KCRA are analyzed in the same manner as federal claims under Title VII. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). To establish a prima facie case of hostile work environment, Gilmore must establish the following five elements: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; and (5) his employer knew or should have known about the harassing conduct but failed to take corrective measures. *Fullen v. City of Columbus*, 514 Fed. App'x 601, 606−07 (6th Cir. 2013). Importantly, "[s]o long as the environment would be reasonably perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993). In deciding whether an environment is hostile or abusive, the Supreme Court instructs that courts should analyze the totality of the circumstances, including (1) the frequency of discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* at 23.

Gilmore claims that he has proven the elements necessary for a hostile work environment action by showing harassment "in the form of comments made by upper-management, related to suspicions about him and being told that he complains too often, and being reprimanded for things that, when done by his Caucasian coworkers, were not reprimanded." (Pl.'s Resp. to Defs.' Renewed Mot. for Summ. J. [DN 38] at 6.) Defendants argue that they are entitled to summary judgment on Gilmore's hostile work environment claim because "Gilmore's argument that he was disciplined different than non-minority employees is premised on nothing more than unsupported allegations." (Defs.' Supp. Mem. of Law in Support of Summ. J. [DN 35-1] at 9.)

It is true that Gilmore has no evidence that he was treated differently than his Caucasian coworkers other than his own testimony from his deposition and Verified Complaint. However, as this motion is on summary judgment by the Defendants, the Court must view all the evidence in a light most favorable to Gilmore. This means the Court must accept Gilmore's allegations that he was regularly punished for behaviors that were acceptable for his white coworkers. Further, the Court will accept that Gilmore's supervisor, James Texas, singled him out and told his white coworker that "he needed to watch Mr. Gilmore and the other African American employee Alex Powell when they were together." (Compl. ¶ 81.) Texas' instructions that coworkers should watch Gilmore were humiliating and threatened the security of Gilmore's job.

Assuming all the allegations in Gilmore's deposition and Verified Complaint to be true, a reasonable jury may find that Defendants created a hostile work environment, in violation of the KCRA. For this reason, Defendants' Renewed Motion for Summary Judgment is **DENIED** regarding Count II for hostile work environment.

## 2. Retaliation (Count III)

The Court dismisses Gilmore's claim of retaliation in Count III. Gilmore alleges that Defendants committed retaliation under the KCRA when they fired him for reporting Land O'Frost to the KCHR and the Department of Labor. "Retaliation claims under the KCRA are evaluated under the same standard as we use to evaluate federal Title VII claims . . . using the burden-shifting framework of *McDonell Douglass Corp. v. Green*, 411 U.S. 792, 801−05 (1973)." *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 504 (6th Cir. 2014). Once the plaintiff has established a prima facie case for retaliation, "the burden of production shifts to the defendant to rebut the presumption by articulating some legitimate, nondiscriminatory reason for its action." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (internal punctuation omitted). "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Id.* at 675. (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)).

In previously dismissing Gilmore's claim of discrimination based on race, this Court determined that Defendants provided a sufficient nondiscriminatory reason for firing Gilmore (Gilmore was suspected of stealing copper wiring from the Land O'Frost facility). Because Gilmore was unable to show that Defendants' proffered nondiscriminatory basis for firing Gilmore was pretext for discrimination, his discrimination claim was dismissed. Likewise, Defendants' suspicions that Gilmore was stealing serves as a nondiscriminatory basis for his allegedly retaliatory termination and Gilmore has failed to show this reason was pretext for discrimination.

Gilmore now attempts to claims that the adverse employment action was not his termination but rather, was a "material modification in duties and loss of prestige." (Pl.'s Resp. at 5.) Quoting *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, Gilmore suggests that these allegations "may rise to the level of adverse action." 132 S.W.3d 790, 803 (Ky. 2004). Yet, the court in *Brooks* made it clear that mere modification of duties and loss of prestige are not enough to state a claim for retaliation.

> A materially adverse change in the terms and conditions of employment, must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* at 802. In this case, Gilmore has offered no evidence of any materially adverse changes in the terms and conditions of his employment at Land O'Frost, other than his termination. Therefore, summary judgment is **GRANTED** to Defendants on Gilmore's claim of retaliation in Count III.

### 3. Wage and Hour (Count VIII)

Finally, in Count VIII, Gilmore claims that he is entitled to relief as Defendants failed to pay him wages and overtime when he was on call during lunch breaks. In July 2015, Gilmore and Land O'Frost entered into a settlement agreement that discharged the company from liability for overtime payments from July 16, 2011 through July 25, 2015. Gilmore now claims that Defendants owe him additional overtime wages because "from the 25th of July 2015 until he was fired there [were] several periods of time that Mr. Gilmore was still required to work during lunch and break periods and is entitled to pay for those specific periods of time." (Compl. ¶ 110.)

Defendants argue that they are entitled to summary judgment on this wage and hour claim because Gilmore admitted that he was not owed any further overtime payments. Both in the Renewed Motion for Summary Judgment and the Reply, Defendants direct the Court to the following portion of Gilmore's deposition where Gilmore discusses the form he signed for Receipt for Payment of Back Wages, which is Exhibit G of Gilmore's Complaint:

> Q: All right. So you signed this form.
> A: Yes.
> Q: And you signed it January 27, 2016.
> A: Yes.
> Q: Just about your signature, it says, "Notice to Employee" and indicates (reads from document) your acceptance of these back wages as marked for the period indicated above means you are accepting the amount as a satisfactory settlement and are releasing this employer from further liability from your claim as indicated above. Do you see that?
> A: Yes.
> Q: So when you signed this, you're saying this is all the back pay that was owed to you.
> A: Yes.
> Q: You weren't owed another nickel.
> A: Yes.
> Q: You agree with that.
> A: Yeah, he calculated how many days I was on break and that's what he came up with. By the time I signed this, I was no longer employed, no longer had any hours worked for them. This is the last check I got concerning Land O'Frost.
> Q: All right. So, as of the time you signed this and got this check, Land O'Frost did not owe you any more wages as it relates to loss of break or loss of lunch time or anything else.
> A: That's a fair assessment, I suppose.

(Gilmore Deposition [DN 25] at 35−36).

Since then, Gilmore's counsel has attempted to backpedal from the statements made at the deposition, stating, "The plaintiff has come to realize, upon further review, that he is entitled to this compensation." (Pl.'s Resp. at 3.) Besides the fact that this statement was made in a brief – which is not considered part of the evidentiary record – Gilmore has failed to come forward with any specific facts that would support his claim that additional compensation is due.

Because Gilmore himself stated definitively that he was not owed any back wages as of January 27, 2016, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on Gilmore's wage and hour claim. Summary judgment is **GRANTED** to Defendants on Count VIII.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** on Counts III and VIII and **DENIED** on Count II.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 10, 2018

cc: counsel of record